*In re* MARRIAGE OF BARBARA ANN HARDY, Petitioner-Appellant, and BOBBY JOE HARDY, Respondent-Appellee.

Fifth District No. 5—87—0060

Opinion filed December 15, 1989.

CHAPMAN, J., dissenting.

Thomas E. Hildebrand, Jr., of Brandt, Slate & Hildebrand, of Granite City, for appellant.

Terry L. Peebles, of Cahokia, for appellee.

JUSTICE GOLDENHERSH delivered the opinion of the court:

On July 1, 1981, the St. Clair County circuit court dissolved the parties' marriage. The court ordered respondent, Bobby Joe Hardy, to pay child support for each of his minor children at $70 per week per child. In addition, the court ordered that in the event respondent received any increase in income, he must pay 35% of any said increase to petitioner, Barbara Ann Hardy, as child support. Respondent must also pay any and all medical expenses incurred by the children. On June 11, 1986, petitioner filed a petition for citation of contempt of court against respondent for failing to pay child support and unreimbursed medical expenses. Petitioner also requested the court award attorney fees and costs. On July 18, 1986, respondent filed a petition to modify child support payments, requesting a decrease in respondent's monthly support payment.

The circuit court held a consolidated hearing on the petitions. The court's order of August 28, 1986, found respondent in arrears on child support in the amount of $15,500, and medical expenses in the amount of $700, and issued a judgment in favor of petitioner against respondent. The court also entered judgment against respondent in the amount of $400 for attorney fees incurred by petitioner in pursuing said citation for contempt. The court further ordered:

"4) That due to Bobby Joe Hardy's economic condition and substantial change in circumstances execution is stayed on the child support arrearages and the unreimbursed medical expenses until further order of the Court;

5) That due to a substantial change in circumstances as of September 1, 1986 Bobby Joe Hardy shall pay the sum of

$600.00 per month, nondivisible and nonallocated child support, said amount to be paid in equal installments of $300.00 bimonthly through the Clerk of the Circuit Court of St. Clair County;

6) That during the month of September, 1987 this Court shall review this order in regards to child support payments and liquidation of the arrearages as heretofore entered."

Petitioner contends on appeal that the trial court erred in several respects:

"(1) in refusing to find respondent in contempt for failure to pay past due support.

(2) in reducing child support payments.

(3) in staying execution of the attorneys fees, child support and unreimbursed medical expenses."

 With regard to the first contention, whether a party is guilty of contempt is a question of fact for the trial court. A reviewing court will not disturb the finding unless it is against the manifest weight of the evidence or the record reflects an abuse of discretion. (*In re Marriage of Logston* (1984), 103 Ill. 2d 266, 286-87, 469 N.E.2d 167, 176; *In re Marriage of Houston* (1986), 150 Ill. App. 3d 608, 615, 501 N.E.2d 1015, 1019.) In this case, the undisputed evidence that respondent was in arrears in his child support payments in the amount of $15,500 and medical expenses of $700 is a *prima facie* showing of contempt. The burden then shifted to respondent to show that his failure to pay was not wilful or contumacious, but due entirely to his inability to pay. (*In re Marriage of Talmadge* (1989), 179 Ill. App. 3d 806, 817, 534 N.E.2d 1356, 1362-63; *In re Marriage of Chenoweth* (1985), 134 Ill. App. 3d 1015, 1018, 481 N.E.2d 1095, 1097; *In re Marriage of Hilkovitch* (1984), 124 Ill. App. 3d 401, 420, 464 N.E.2d 795, 807.) Respondent can meet his burden only through a showing of definite and explicit evidence. (*In re Marriage of Houston* (1986), 150 Ill. App. 3d 608, 615, 501 N.E.2d 1015, 1020.) Testimony of a general, indefinite nature with regard to financial status does not meet this burden. Where a party seeks to show that the failure to pay is due to inability, the party must show, with reasonable certainty, the amount of money he has received since the order was issued. He must then show that the money was disbursed in the payment of expenses which, under the law, he should pay before making any payment on the decree. (*Houston*, 150 Ill. App. 3d 608, 501 N.E.2d 1015; *In re Marriage of Ramos* (1984), 126 Ill. App. 3d 391, 398, 466 N.E.2d 1016, 1022.) Respondent testified that he used a portion of his earnings to pay the children's medical bills, and also a substantial tax lia-

bility which he incurred while self-employed. Copies of respondent's tax returns admitted into evidence at the hearing in the circuit court showed respondent's adjusted gross income for each of the five years since his divorce as follows:

 1981—$28,417
 1982—$31,884
 1983—$29,272
 1984—$19,439
 1985—$31,192

Respondent testified that his projected adjusted gross income for 1986 was $37,066.

The record further shows that due to an employment layoff in 1983, respondent was paying self-employment tax to the Internal Revenue Service in the amount of $301 per month to satisfy a tax liability of $9,860 which he had incurred. Respondent willingly admitted his child support obligation in open court, and showed that he was indebted to the Internal Revenue Service and petitioner. In addition, the circuit court had available to it, as per local rules, an affidavit of assets and liabilities of both petitioner and respondent.

■■ ■ The trial court must review the peculiar facts of each case to determine whether the conduct complained of is contemptuous. An appellate court will reverse the decision of the circuit court only if that court's judgment is against the manifest weight of the evidence. (*Hilkovitch*, 124 Ill. App. 3d at 420, 464 N.E.2d at 807; *Houston*, 150 Ill. App. 3d at 615, 501 N.E.2d at 1019.) As a defense to a contempt action, the respondent need show simply that his failure to comply with the order was not a wilful or contumacious refusal to pay. (*Ellingwood v. Ellingwood* (1975), 25 Ill. App. 3d 587, 593, 323 N.E.2d 571, 576.) Although reasonable minds can differ, taking into consideration the matters sworn to in the affidavit of the assets and liabilities of respondent, along with the other evidence presented at the hearing, we hold that the trial court did not err in finding that respondent's failure to pay was not wilful or contumacious. The trial court did not abuse its discretion.

■■ Secondly, petitioner argues that the trial court erred in reducing the amount of child support respondent must pay. Section 510(a) of the Marriage and Dissolution of Marriage Act (the Act) provides in pertinent part:

> "[T]he provisions of any judgment respecting maintenance or support may be modified only as to installments accruing subsequent to due notice by the moving party of the filing of the motion for modification and only upon a showing of a substantial

change in circumstances." Ill. Rev. Stat. 1987, ch. 40, par. 510(a).

■■ ■ The circuit court's findings as to the modification of the child support rest in the sound discretion of the court and a reviewing court will not interfere with the exercise of such discretion in the absence of its abuse. (*In re Marriage of Logston* (1984), 103 Ill. 2d 266, 469 N.E.2d 167.) Illinois cases have held that economic reversals as a result of changes in employment or bad investments, if made in good faith, may constitute a material change in circumstances sufficient to warrant a modification of a child support order. *In re Marriage of Eisenstein* (1988), 172 Ill. App. 3d 264, 270, 526 N.E.2d 496, 500; *Coons v. Wilder* (1981), 93 Ill. App. 3d 127, 132, 416 N.E.2d 785, 790.

■■■ In determining whether a change in status was made in good faith, the crucial consideration is whether the change was prompted by a desire to evade financial responsibility for supporting the children or otherwise jeopardize their interests. (*Coons*, 93 Ill. App. 3d at 132, 416 N.E.2d at 790; *In re Marriage of Ebert* (1980), 81 Ill. App. 3d 44, 47, 400 N.E.2d 995, 997.) Certainly this court cannot find that an employment layoff and an attempt to become self-employed are attempts to evade financial responsibility. The circuit court is in a much better position to make a finding on such matter. In view of the circumstances noted above, it is apparent that the circuit court's decision was not against the manifest weight of the evidence and we will not interfere with the exercise of its discretion. *Logston*, 103 Ill. 2d 266, 469 N.E.2d 167.

■■■ As for staying execution of child support and unreimbursed medical expenses, past-due installments are a vested right and the court has no authority to modify them. *In re Marriage of Erickson* (1985), 136 Ill. App. 3d 907, 914, 483 N.E.2d 692, 698; *In re Marriage of Burrows* (1984), 126 Ill. App. 3d 752, 757, 467 N.E.2d 987, 991; *In re Marriage of Williams* (1983), 115 Ill. App. 3d 55, 57, 450 N.E.2d 34, 35.

■■■ A substantial number of cases extend the rule noted above. These cases hold the expectation of past-due installments a vested right and the trial court without authority to modify them either as to amount or time of payment. (*Jones v. Meade* (1984), 126 Ill. App. 3d 897, 902, 467 N.E.2d 657, 661; *Sostak v. Sostak* (1983), 113 Ill. App. 3d 954, 958, 447 N.E.2d 1345, 1348; *In re Marriage of McDavid* (1981), 97 Ill. App. 3d 1044, 1050, 425 N.E.2d 442, 447; *Hoos v. Hoos* (1980), 86 Ill. App. 3d 817, 821, 408 N.E.2d 752, 757; *Schmitt v. Woods* (1979), 73 Ill. App. 3d 498, 500, 392 N.E.2d 55, 56.) When these cases say that the trial court cannot modify the "time" of pay-

ment, they are not ordering the debtor to pay in full immediately. The courts are saying that the date is set and vested for four separate functions. Each support or maintenance payment is vested on the date it becomes due, this date becoming the default/vesting date. The default/vesting date is important for (1) calculating the total arrearage, (2) calculating the interest owed, if any (see *Finley v. Finley* (1980), 81 Ill. 2d 317, 331-32, 410 N.E.2d 12, 19), (3) an indicator or factor in determining whether the conduct was wilful or contumacious, and (4) calculating attorney fees under section 508 of the Act (Ill. Rev. Stat. 1987, ch. 40, par. 508). In the instant case, the circuit court did not modify either the amount of past-due support installments or the date upon which they vested. Its order dealt with the discharge procedure of the previously vested obligations.

In *Finley v. Finley* (1980), 81 Ill. 2d 317, 332, 410 N.E.2d 12, 19, the supreme court held that dissolution proceedings are substantially similar in nature to a chancery proceeding, and, as such, are governed by the rules of chancery. The court stated:

"In a chancery proceeding, the allowance of interest lies within the sound discretion of the trial judge and is allowed where warranted by equitable considerations and is disallowed if such an award would not comport with justice and equity. [Citations.] As stated in *Groome* [*v. Freyn Engineering Co.* (1940), 374 Ill. 113, 131, 28 N.E.2d 274, 283], 'In a proper case, equitable considerations permit a court of equity to allow or disallow interest as the equities of the case may demand.' (374 Ill. 113, 131.) We therefore conclude that the allowance of interest on past-due periodic support payments is not mandatory as contended by the plaintiff, but lies within the sound discretion of the trial judge, whose determination will not be set aside absent an abuse of that discretion." (*Finley*, 81 Ill. 2d at 332, 410 N.E.2d at 19.)

As the allowance of interest lies within the sound discretion of the trial judge, so, too, does the discharge procedure of vested support payments. The setting of this procedure, as in the awarding of interest, is governed by equitable considerations of chancery. There is no indication in the record that the circuit court intended to alter or reduce the arrearage in question. The circuit court's concern was with the manner of discharging voluminous obligations, not the vacation of any vested right. We therefore conclude that the setting of a procedure for discharging vested support and maintenance payments which are in arrears lies within the sound discretion of the trial judge. We will not set aside his discharge procedure absent an abuse of that dis-

cretion. In reviewing the record, we cannot say that the circuit court abused that discretion.

As to attorney fees, the Act provides for an award of fees under certain conditions (Ill. Rev. Stat. 1987, ch. 40, par. 508). Neither side contests the award of attorney fees, just the stay. Petitioner concedes that the stay is within the court's discretion under its general equity powers. As noted above, the determination of the equities of discharge of obligations is within the province of the circuit court. This court will not invade that province without a showing of a clear abuse of discretion.

In light of the record before the court, the rulings of the circuit court were essentially discretionary. Although reasonable minds can differ on any given decision in what is perhaps the harshest and most problematic area of the law, the reconciliation of irreconcilable problems in domestic relations, the trial court did not abuse its discretion.

For the foregoing reasons, the order of the circuit court of St. Clair County is affirmed.

Affirmed.

RARICK, J., concurs.

JUSTICE CHAPMAN, dissenting:
The factual matters and the general principles of law set forth in the majority opinion are accurate, but the conclusions drawn are, in my judgment, incorrect.

With regard to the requested contempt finding, the evidence clearly established that respondent was over $15,000 in arrears in child support over an approximate five-year period. During that same period respondent's income was certainly sufficient to meet his support obligations. Indeed, his only excuse for not meeting them was the fact that *he* had incurred a Federal tax obligation during a time period that he was self-employed. This is not the type of extreme misfortune which justifies a nonpayment of child support (*Betts v. Betts* (1987), 155 Ill. App. 3d 85, 507 N.E.2d 912), and even if it were, the record does not show that respondent has significantly reduced the tax obligation with the funds he has withheld from his children.

The majority's reference to an affidavit of assets and liabilities to justify respondent's conduct is not persuasive. The affidavit of Bobby Joe Hardy shows he has an average monthly salary of $1,037. His estimated monthly expenses total $1,033, which does not include any expenses incurred on behalf of his children. Mr. Hardy estimates the ex-

penses he incurs on behalf of his children to equal $751 per month. It is not clear from the affidavit whether these expenses are for the children of his marriage to Barbara Hardy or to his present wife. Barbara Hardy's purported monthly salary as shown by her affidavit is $866. She declares that the average monthly expenses incurred by her and her children for which she is responsible total $1,556.

Considering Bobby Joe Hardy's asset-to-liability ratio is $1,037/$1,032, and Barbara Hardy's asset-to-liability ratio is $866/$1,556, it is clearly evident that Barbara Hardy's liabilities greatly exceed Bobby Joe Hardy's liabilities, and that reliance on the affidavits as justification for Bobby Joe Hardy's conduct is not well-founded.

Turning to the issue of the reduction in child support ordered by the trial court, respondent argues that petitioner's earnings had increased since the divorce, while his earnings had decreased. Such an argument has little merit where although petitioner's earnings had in fact increased since the divorce, her five-year average earnings since the divorce equalled only $10,800, whereas respondent's five-year average earnings equalled $28,050. In comparison, petitioner's gross wage in 1981, the year the initial order of support was entered, was $4,483, as compared to her earnings of $13,421 in 1985. Respondent's gross wage in 1981 was $28,417 as compared to his earnings of $31,192 in 1985. It was only in 1984 that respondent's income fell below the amount he was earning the year of the divorce. In fact, respondent's average income based on earnings received in 1981 through 1985 and respondent's projected earnings of 1986 total $29,545. This amount exceeds respondent's 1981 income on which the trial court relied in entering the initial order of support.

The only showing respondent made of diminished resources with which to pay the child support was the tax liability due the Internal Revenue Service. The record shows that the tax liability was incurred due to his failure to withhold while he was self-employed. The record also reveals that respondent has remarried and that of that marriage, a physically impaired son was born so that respondent has incurred additional medical expenses. The remarriage of respondent and a child by the second marriage do not present, in and of themselves, a change of conditions sufficient to warrant a modification. Although the effect may be to deprive a second wife of support, from a legal standpoint the first obligations must be met before the second obligations can or will be considered. (*Gregory v. Gregory* (1964), 52 Ill. App. 2d 262, 268, 202 N.E.2d 139, 143; *Roqueplot v. Roqueplot* (1980), 88 Ill. App. 3d 59, 63, 410 N.E.2d 441, 445.) The record does not show evidence of default or missed payments on respondent's other

debts or obligations; thus, I infer that respondent was current on his other debts.

I conclude that in view of the evidence the only change in circumstances was an increase in ability to pay which could never warrant a reduction in child support. It is not necessary for me to reach the issue whether the trial court erred in ordering a stay, since I find that the trial court's conclusion was against the manifest weight of the evidence. I would reverse the decision of the trial court.