*In re* MARRIAGE OF BARBARA J. WILEY, Petitioner-Appellee, and GARY W. WILEY, Respondent-Appellant.

Fourth District   Nos. 4—89—0764, 4—89—0927 cons.

Opinion filed June 21, 1990.

Gerald L. Timmerwilke, of Lewis, Blickhan, Longlett & Timmerwilke, of Quincy, and Stephen M. Komie, of Komie & Associates, of Chicago, for appellant.

Richard F. Scholz, of Quincy, for appellee.

JUSTICE STEIGMANN delivered the opinion of the court:

This appeal involves the enforcement of a marital settlement agreement. Respondent, Gary W. Wiley, argues that the trial court erred in (1) denying both of his motions for discharge of contempt, (2) enforcing a marital settlement agreement and supplement thereto, (3) awarding attorney fees to petitioner, Barbara J. Wiley, and (4) denying respondent's petition for reduction or abatement of support and maintenance.

We disagree and affirm.

On August 3, 1988, the Wileys were granted a dissolution of marriage. Also approved and incorporated into the dissolution order was a marital settlement agreement which had been executed by the parties on July 15, 1988. This settlement agreement required Gary to pay Barbara $200 per month for child support and $250 per month for maintenance over a five-year period. In addition, the agreement contained a provision concerning retirement, which stated the following:

> "12. *RETIREMENT PLANS*
>
> It is expressly agreed that the Profit Sharing Plan (401 K) through Gary's employer in which Bankers Trust Company of New York is the Trustee and an IRA Program (Individual Retirement Account) in the Mercantile Trust & Savings Bank of Quincy in Gary's name were funded by mutual contributions from the parties hereto. Each agrees that after sufficient information is secured concerning the penalties, the ability to switch beneficiaries, the income tax to be paid and any other information which would impact on the value of said accounts, a fair and equitable settlement will be reached which, in effect, insures to each of the parties hereto approximately the same retirement benefits."

The agreement also provided for the payment of debts and attorney fees, the maintenance of life insurance, and the distribution of real estate, personal property, stocks, bonds, and vehicles. The last page of the agreement stated the following:

> "This Agreement shall operate as a full, complete and final settlement, satisfaction, discharge and adjudication of any and all legal rights, claims or demands of either party against the other, for support, maintenance, attorney fees, distribution or division of the property of the parties, widow's award, homestead, inheritance or any other interest or money demand which might otherwise than for this instrument be asserted by either party hereto against the other party or the property or estate of such other party."

In March 1989, a petition to show cause was filed by Barbara alleging that Gary had failed to pay both child support and maintenance, and had failed to assign half of the profit-sharing plan and the IRA to Barbara. In her petition, Barbara also requested attorney fees. Attached to Barbara's petition was an assignment made on September 7, 1988, to Barbara of half of Gary's interests in the profit-sharing plan and half of the IRA. Also attached was a supplemental agreement dated September 14, 1988, which stated on its face that it was supplemental to the July 15, 1988, agreement. That supplemental agreement provided in part the following:

"2. Gary will pay from said funds received from Harsco to Barbara one-half of the said funds received from Harsco and one-half of the funds in the IRA account in the Mercantile Trust & Savings Bank of Quincy.

\* \* \*

4. On the completion of distribution, each of the parties will have received one-half of the total of the two accounts, one in Mercantile Trust & Savings Bank of Quincy in an IRA account and one in Bankers Trust Company under a profit sharing plan (401 K) with Harsco, less the amount withheld by Harsco for income taxes and penalties, if any.

5. In the event that the Harsco funds are received but not distributed as herein provided, all of the funds in the Mercantile Trust & Savings Bank IRA account will be distributed to Barbara, but said distribution will in no way affect Barbara's right to one-half of said funds, which right may be enforced by proceedings \* \* \*."

Also on March 30, 1989, Barbara filed a supplemental petition to show cause, alleging that Gary failed to maintain life insurance. Barbara later filed a petition for an increase in child support and for payment of educational expenses.

The court set the hearing on all of these petitions for April 20, 1989. However, due to the late employment of counsel by Gary, it was rescheduled for April 27, 1989. Gary subsequently filed a motion for continuance. On April 28, 1989, the court granted the motion and reset the hearing for May 25, 1989. In its order, the court required Gary to provide opposing counsel within 10 days with all information concerning his 401(k) retirement program and the Mercantile Bank IRAs.

On May 2, 1989, Gary filed a petition for reduction or abatement of support and maintenance, alleging that there had been a substantial and material change in his financial circumstances. Specifically,

Gary claimed that at the time of the dissolution of marriage, he was earning $25,000 a year at Harsco, with a bonus of $12,000. However, since then, he had left Harsco and now earned only $600 monthly.

On May 25, 1989, a hearing was held on all pending matters, and on June 16, 1989, the trial court made the following findings:

"1. The parties executed a valid Marital Settlement Agreement, the terms of which were incorporated into the Judgment Order entered August 3, 198[8]. In that Agreement, paragraph 12, the parties agreed to reach a future settlement as to marital retirement assets upon securing necessary additional information about those assets.

2. On September 14, 198[8], the parties entered into a supplemental Agreement regarding division and payment of the retirement assets. That supplemental Agreement was not filed or specifically incorporated into the Judgment Order, but the parties clearly intended that the second Agreement would be controlling as to their respective rights and obligations in the retirement assets and their distribution. Further, no objection has been raised to petitioner's attempt to enforce the second Agreement by use of the contempt process, so it is presumed that the parties intended the second Agreement to supplement the Judgment Order. However, the Court is of the opinion that the contempt process is not available for enforcement of the supplemental Agreement because it was never made part of the Judgment Order, and thus its violation was not a violation of an order of court. The petitioner is, however, entitled to her contractual remedies for any breach of the supplemental Agreement occurring before such time as the Judgment Order may be modified by the supplemental Agreement. Alternatively, the petitioner is entitled to have the respondent ordered to perform the supplemental Agreement.

3. The respondent has violated the terms of the supplemental Agreement, in that he received the proceeds of the Harsco 401(k) Plan in December, 1988, invested them in an annuity in his name, and has failed to pay petitioner her contractual share as provided for in the supplemental Agreement. No time period for distribution of the funds was stated in the supplemental Agreement, but the court finds six months' delay to be unreasonable and unjustified. Accordingly, the penalty provisions of paragraph 5 of that Agreement becomes [sic] operative. Those penalty provisions, agreed to by the parties, negate any claims for prejudgment interest. No evidence was presented as to the

value of the retirement assets.

4. As of the date the first Petition to Show Cause was filed, March 30, 1989, respondent was current in his maintenance and child support payments. As of the date of the hearing on that Petition, May 25, 1989, he was $900.00 in arrears.

5. Paragraph 9. A. of the Agreement incorporated in the Judgment Order does not provide that respondent has the obligation to submit to petitioner evidence of his compliance therewith. However, given the conduct of the respondent in failing to comply with other terms of the parties' agreements, evidence of compliance should be provided to petitioner that respondent is purchasing the required insurance.

\* \* \*

7. The court's April 28, 1989, Order directed respondent to provide certain information about the Harsco 401(k) and Mercantile IRA accounts to petitioner's attorney within ten days. He has failed to provide that information without just cause, and the failure is therefore found to be willful.

8. Respondent has failed to prove that he is entitled to a reduction or abatement of maintenance and/or child support. The court finds that respondent's testimony is not credible as to his current circumstances. The timing of the loss of his last full-time employment, where his present wife was his employer, and his actions regarding distribution of the parties' retirement assets, among other things, taint respondent's testimony. In any event, respondent voluntarily entered into the marital settlement Agreement, and should be held to the bargain he made with petitioner as to maintenance, especially in view of the assets owned by respondent.

9. No evidence was presented as to the amount of attorneys' fees incurred or paid by the parties."

The court then denied in part and granted in part the petition to show cause, explaining as follows:

"The respondent is not found to be in contempt for violation of the supplemental Agreement, but is directed to forthwith pay to petitioner one-half of the proceeds of the Harsco 401(k) plan, providing to petitioner's attorney the information about that plan per the Court's order of April 28, 1989; further, petitioner is awarded and assigned all of the parties' interests in the Mercantile IRA certificates of deposit.

Respondent is found to be in contempt for his violation of the order of April 28, 1989, and may purge that contempt by

compliance with this order and payment of any attorney's fees reasonably incurred by petitioner in connection with these proceedings.

Respondent is found to be in contempt for failure to pay maintenance and child support as ordered, and a judgment for $900.00 is entered in favor of petitioner and against respondent. Respondent may purge the contempt by paying the arrearage to the Clerk of the court forthwith, and by payment of any attorney's fees reasonably incurred by petitioner in connection with these proceedings.

The prayer for payment of interest is denied.

B. The Supplemental Petition to Show Cause is denied, but respondent is directed to provide petitioner with evidence of payment of the current premium for the life insurance forthwith, and then annually within fourteen days following the premium due date.

C. The Petition for Increase in Child Support is denied.

D. The Petition for Reduction or Abatement of Maintenance and Child Support is denied."

On June 21, 1989, Barbara petitioned for a hearing for the purpose of producing evidence on the award of attorney fees.

On July 5, 1989, Gary filed a motion, requesting, *inter alia*, the court to reconsider both its ruling concerning the alleged failure to comply with the supplemental agreement and its finding of contempt concerning his failure to pay child support and maintenance. The motion also requested that the court reconsider the award of attorney fees because no evidence had been presented at trial concerning the fees and no request to reserve ruling on the fees had been made.

The hearing on Gary's motion was held on July 27, 1989. At that hearing, Gary argued that distribution of the retirement funds could not take place until both parties' incomes had been determined for 1988. Gary also argued that he should not be held in contempt on the issue of child support and maintenance because of his loss of income and change of employment. Gary claimed that he did not quit his job in order to avoid his obligations.

In regard to attorney fees, the court noted that the applicable statute provided that when a party is found to be in contempt, the other party is entitled to an award of fees. The court found that Gary was responsible for his failure to pay both maintenance and child support.

On July 27, 1989, the court ordered Gary to provide information concerning the 401(k) plan within 14 days or to personally appear at

the next hearing, which was allotted for August 14, 1989. The court also set the hearing on attorney fees on that date.

On August 14, 1989, the respondent failed to appear, and a body attachment was issued. Bail was fixed in the amount of $5,000. Respondent was again ordered to appear on September 1, 1989.

On August 22, 1989, the court entered an order in reconsideration of its order of June 16, 1989. In this order, the court found that Gary offered no satisfactory evidence for his delay in paying Barbara her share of the retirement funds. In support of its conclusion, the court found Gary's excuse for not paying the money—for the last six months, his accountant had been compiling an opinion as to the tax consequences of the retirement fund—to be unpersuasive. The court also found that respondent failed to provide the retirement-fund documentation as ordered. In short, the court found that Gary had not only acted in bad faith, but that he also indicated no willingness to change his future behavior. The court then ordered the contempt findings with respect to the delay and violation of its production orders to stand.

On September 1, 1989, Gary again failed to appear in court. At this hearing, Gary's attorney tendered $2,500 from Gary's present wife to satisfy Gary's maintenance and child support obligations. In addition, Gary's counsel tendered documentation concerning the retirement plan to Barbara. The court found that these actions partially purged Gary of contempt, noting that Gary had not yet provided all information as ordered. The court then ordered Gary to be present at the next hearing and to provide full documentation in regard to (1) the 401(k) plan, (2) the Mercantile IRA account, (3) the annuity of January 9, 1989, issued by American Mutual Life Insurance Company, and (4) any and all matters in dispute in regard to the case.

On September 11, 1989, Gary filed a motion for discharge of contempt, arguing that because all of the support and maintenance payments were current and all of the documentation concerning the annuity and IRAs had been provided as directed, he had purged himself of contempt. Gary also requested that the contempt proceedings be dismissed and that the court enter an order terminating all proceedings.

The hearing on Gary's motion was held on September 15, 1989. Again, Gary failed to appear. Over an objection by Gary's counsel, Barbara presented evidence concerning the amount of money in the annuity and retirement funds. The court denied Gary's motion for discharge of contempt, noting that Gary had failed to appear as ordered and failed to provide evidence of insurance coverage. The court then

entered a judgment in favor of Barbara in the amount of half of the proceeds of the retirement fund.

Also on September 15, 1989, the court considered evidence on attorney fees. Barbara's counsel presented a bill itemizing the time he spent in enforcing the dissolution order. He then testified that his hourly rate was $75 and that he charged an additional $1,500 because of the effect the case had on his "general welfare and nerves." He noted the extreme agitation involved and the unusual nature of the case. On cross-examination, Barbara's counsel acknowledged that he had not broken down the charges with respect to what services were provided as a direct result of the contempt proceedings.

A second attorney testified in support of the fees requested by Barbara's attorney. He testified that on three occasions he had imposed a similar additional charge on his clients. He stated that he imposed this charge only in extreme cases.

Barbara also testified on the subject of fees. She stated that she did not know about the extra charge until seven days prior to the hearing. She also stated that she first learned of the amount that day. The court awarded the entire amount requested, including the additional charge of $1,500.

A second motion for discharge from contempt was filed on October 2, 1989, and at the hearing on that motion held on October 3, 1989, Gary again failed to appear. The court noted that the contempt finding was for nonappearance, failure to follow previous court orders, and failure to produce documents.

On October 27, 1989, the court entered two separate orders. The orders consolidated previous rulings and denied both of Gary's motions for discharge of contempt.

A motion to reconsider was filed on November 20, 1989, denied on November 21, 1989. Gary appeals the orders entered on October 27 and November 21, 1989.

Gary first argues on appeal that he should not be held in contempt for failing to pay petitioner's attorney fees or for failing to divide or distribute retirement funds. The basis of respondent's contention lies in the trial court's order of October 27, 1989, where the trial court stated the following:

"The provisions of the June 16, 1989, Order regarding purging of contempt by payment of petitioner's attorney's fees and the Harsco funds due petitioner remain in effect. Those amounts are ordered paid forthwith, in view of their availability from the annuity purchased by respondent."

Gary maintains that because he was not ordered by the court to

pay half of the retirement funds to petitioner in the parties' original dissolution order, he cannot be held in contempt of court for failing to do so.

■ Gary's argument misrepresents the court's action. Gary was not held in contempt for failing to pay Barbara's attorney fees or for failing to divide or distribute retirement funds. Instead, these were two steps specified by the court that Gary could take to purge the contempt in which he was found as a result of his failing to perform other acts that he had been ordered to perform.

Paragraph 12 of the marital settlement agreement pertaining to retirement benefits stated that, after sufficient information was secured concerning the penalties, the ability to switch beneficiaries, the income tax to be paid, and any other information which would impact on said accounts, a fair and equitable settlement would be reached which insures each of the parties approximately the same retirement benefits. This agreement was specifically incorporated into the judgment of dissolution and, as a result, can be enforced.

Upon careful review of the record, we find that Gary never complied with paragraph 12. The trial court repeatedly ordered Gary to supply information regarding the retirement funds, but Gary failed to do so. In addition, the import of the order is clear—that the retirement funds are to be divided and Barbara's share distributed to her. Nevertheless, Gary did not give Barbara her share of the retirement funds.

Gary next argues that the trial court erred in enforcing the marital settlement agreement and supplement thereto because the supplemental agreement was never incorporated or approved by court order.

In its order of October 27, 1989, the trial court stated the following:

"A judgment for $11,741.15 is entered in favor of petitioner and against respondent, representing petitioner's share of the Harsco retirement funds. Petitioner is awarded one-half of the Mercantile Trust and Savings Bank accounts No. 001—3—390—2 and No. 001—4—082—3 ($1633.85), provided, however, that she may elect to receive the entire amounts of those accounts, which would reduce the amount of the judgment for the Harsco funds by $1633.85."

Further, the marital settlement agreement provided that after sufficient information was secured concerning the penalties, the ability to switch beneficiaries, the income tax to be paid, and any other information which would impact on the value of the 401(k) and IRA accounts, a fair and equitable settlement would be reached which in-

sured to each of the parties approximately the same retirement benefits. This agreement was incorporated into the dissolution order. The supplemental agreement dated September 14, 1988, however, was not so incorporated. It read as follows:

> "Gary will pay from said funds received from Harsco to Barbara one-half of the said funds received from Harsco and one-half of the funds in the IRA account in the Mercantile Trust & Savings Bank of Quincy.
>
> *** [L]ess the amount withheld by Harsco for income taxes and penalties, if any."

Additionally, the marital settlement agreement further provided for a full, complete and final settlement, satisfaction, discharge, and adjudication of any and all legal rights, and distribution or division of the property of the parties.

■ The trial court did not err in requiring Gary to pay half of the retirement proceeds to Barbara. The court's order was not inconsistent with the marital settlement agreement. Because the court found that Gary's refusal to pay Barbara her portion of the retirement funds (as agreed upon in the marital settlement agreement) was in bad faith, the court itself provided a full, complete, and final settlement of the distribution and division of that property.

Gary also claims that the trial court erred in awarding and assessing attorney fees to Barbara. Specifically, Gary maintains that the trial court erred in refusing to hear evidence on Barbara's ability to pay her own fees, in failing to make a distinction in its fee award between time spent on contempt versus noncontempt issues, and in allowing $1,500 to be added to the attorney fees awarded to petitioner.

■ Section 508(b) of the Illinois Marriage and Dissolution of Marriage Act (Act) (Ill. Rev. Stat. 1987, ch. 40, par. 508(b)) provides that a court *shall* order a spouse to pay a reasonable amount for the costs and reasonable attorney fees incurred by the prevailing spouse in connection with the enforcement of an order or judgment when the court finds that the failure to comply with the order or judgment was without cause or justification.

■ Accordingly, because Gary was found in contempt for failing to comply with the dissolution order, the trial court correctly found that Barbara was entitled to an award for attorney fees incurred in connection with the enforcement of that order. These fees are to be awarded even absent a showing of that party's inability to pay the fees and the other party's ability to pay. (*In re Marriage of Cierny* (1989), 187 Ill. App. 3d 334, 348, 543 N.E.2d 201, 211.) An award of attorney fees will not be overturned absent an abuse of discretion.

*Baker v. Baker* (1990), 193 Ill. App. 3d 294, 303, 549 N.E.2d 954, 959.

■■ With regard to Gary's contention that the trial court failed to make a distinction in its fee award between time spent on contempt versus noncontempt issues, we find it unsupported by the record.

In its order of October 27, 1989, the trial court made the following finding:

> "Evidence was presented regarding the attorney fees incurred by petitioner in prosecuting the post-judgment proceedings. 5.7 hours were spent by petitioner's working on the case immediately following the Judgment for Dissolution but before the respondent began overtly hedging on his obligations thereunder, through November 3, 1988. 12.7 hours were spent thereafter through the May 25, 1989, hearing. 19.7 more hours were spent through the date of this hearing. The total of 38.1 hours was necessarily incurred in petitioner's pursuing the completion of the settlement between the parties and attempting to force the respondent to comply with its terms. From respondent's actions, it appears he never intended to comply with the agreement signed on September 14, 1988. This bad faith prompts the Court to assess petitioner's attorney fees in total against the respondent as a sanction for the contempt. The total reasonable and necessary fees thus incurred is $4315.59."

Based upon a review of the record, and, in particular, a review of the bill submitted by Barbara's attorney, we find that the trial court did not abuse its discretion in awarding attorney fees to Barbara.

■■ Finally, with regard to the award of a $1,500 supplement to the attorney fees which normally would be awarded to Barbara, we find this supplemental award to be reasonable and within the trial court's discretion. At the hearing on attorney fees, a second attorney testified that charges of this kind, albeit unusual, are used in cases like the present one, which involve "extreme agitation" for the attorney handling the case. In light of the many complex and time-consuming issues involved in this case, we do not find the $1,500 supplemental award to be an abuse of discretion.

Last, Gary argues that the trial court erred in denying his petition for reduction or abatement of support and maintenance. Specifically, Gary claims that because he incurred a material and substantial change in circumstances affecting his ability to pay child support and maintenance in accordance with section 510 of the Act (Ill. Rev. Stat. 1987, ch. 40, par. 510), he is entitled to a reduction or abatement of that support and maintenance.

■ ■ A determination regarding modification of child support rests in the sound discretion of the circuit court, and this court will not interfere with the exercise of that discretion in the absence of its abuse. (*In re Marriage of Hardy* (1989), 191 Ill. App. 3d 685, 690, 548 N.E.2d 139, 142.) Illinois cases have held that economic reversals as the result of changes in employment, if made in good faith, may constitute a material change in circumstances sufficient to warrant a modification of a child support order. (*Hardy*, 191 Ill. App. 3d at 690, 548 N.E.2d at 142.) In determining whether a change in status was made in good faith, the crucial consideration is whether the change was prompted by a desire to evade financial responsibility for supporting the children or otherwise to jeopardize their interests. *Hardy*, 191 Ill. App. 3d at 690, 548 N.E.2d at 142.

In its order of June 16, 1989, the trial court found that Gary failed to prove that he was entitled to a reduction or abatement of maintenance and child support. In so holding, the court found that Gary's testimony about his circumstances was not credible and concluded that Gary's job change was not made in good faith. The court held that he was trying to evade his responsibilities.

■ Because the trial court is in the best position to observe the demeanor of the witnesses and to asses their credibility, we are unwilling to second-guess the trial court's determination of which witnesses are believable and which are not. We find no abuse of discretion in the trial court's denial of Gary's petition for reduction or abatement of support and maintenance.

Before concluding, we wish to commend the trial court for the obvious care it used and time it expended in preparing its written orders in this case. Our task of reviewing these complicated proceedings was greatly facilitated by the court's written orders.

For the foregoing reasons, the circuit court of Adams County is affirmed.

Affirmed.

KNECHT, P.J., and GREEN, J., concur.