*In re* MARRIAGE OF ANNA MARIE MICHAELSON, Petitioner-Appellee, and ROBERT L. MICHAELSON, Respondent-Appellant.

First District (2nd Division)   Nos. 1—04—3783, 1—05—0696 cons.

Opinion filed August 16, 2005.

Nadler, Pritikin & Mirabelli, L.L.C., of Chicago, for appellant.

Frederick M. Lerner, of Lerner & Wilhoite, of Chicago, for appellee.

JUSTICE WOLFSON delivered the opinion of the court:
We are asked to determine the meaning of the maintenance provi-

sion in the parties' marital settlement agreement. The husband, Robert L. Michaelson (Robert), agreed to pay maintenance to his wife, Anna Marie Michaelson (Anna), for eight years, totaling $360,000. The question is whether the provision provided for maintenance in gross, not subject to termination or modification on Robert's motion. The trial court read the provision to prohibit Robert's attempt to terminate or modify maintenance and ordered him to pay Anna's attorney fees. We affirm the trial court.

## FACTS

The parties were married on May 27, 1989. No children were born of the marriage or adopted by the parties.[1] The judgment for dissolution of marriage was entered on July 6, 1998. The judgment incorporated the parties' written marital settlement agreement (Agreement). The following provisions of the Agreement are pertinent to this case:

"ARTICLE III
*MAINTENANCE*

3.1 *Amount.* Husband shall be obligated to pay to Wife, as and for spousal support, the sum of $45,000 per year, beginning at such time that Husband becomes an attending physician, post residency, for a period of eight (8) years, for a total of Three Hundred Sixty Thousand ($360,000) Dollars. Said spousal support shall be paid to Wife in ninety six (96) equal monthly installments of Three Thousand Seven Hundred Fifty ($3,750.00) Dollars.

Husband shall be allowed to deduct any and all such payments as maintenance, and Wife shall be required to claim such payments as income, for Internal Revenue and State tax purposes.

\* \* \*

3.3 *Termination of Maintenance.* The maintenance payment(s)/ obligation provided for by this agreement shall terminate completely, only after the payment of all monies due to Wife are paid in full, regardless of any other changed circumstances of the parties.

\* \* \*

ARTICLE V
*GENERAL*
\* \* \*

5.5 *Modification.* The provisions of this agreement may be modified or rescinded by the written consent of both parties; however, the parties agree that they will not petition the court for a modification unless there is a substantial change in circumstances of the parties."

---

[1] We note that both parties' briefs contain a series of unseemly accusations and counteraccusations concerning matters outside the trial record. We will not consider them.

From September 2001 through December 2003, Robert made maintenance payments to Anna totaling $90,000. As of January 1, 2004, Robert stopped paying maintenance. According to Robert, from January 2004 through September 2004, he placed into escrow the sum of $3,750 per month in a separate bank account, not accessible by Anna.

On March 12, 2004, Robert filed his "Petition to Terminate Or, in the Alternative, Reduce Maintenance." Robert argued his obligation to pay maintenance terminated on Anna's alleged cohabitation with another man or, alternatively, upon her remarriage, pursuant to sections 510(c) and 510(a—5) of the Illinois Marriage and Dissolution of Marriage Act (the Act) (750 ILCS 5/510 (West 2004)). Section 510(c) provides:

> "Unless otherwise agreed by the parties in a written agreement set forth in the judgment or otherwise approved by the court, the obligation to pay future maintenance is terminated upon the death of either party, or the remarriage of the party receiving maintenance, or if the party receiving maintenance cohabits with another person on a resident, continuing conjugal basis." 750 ILCS 5/510(c) (West 2002).

Section 510(a—5) of the Act allows an order of maintenance to be modified or terminated on a showing of a substantial change in circumstances. 750 ILCS 5/510(a—5) (West 2004). Robert argued Anna's remarriage constituted a substantial change in circumstances warranting a reduction in maintenance. Robert later amended his petition to add paragraph 5.5 of the Agreement, contending the paragraph allowed maintenance to be modified.

On May 25, 2004, Anna filed a petition for rule to show cause why Robert should not be held in contempt of court, alleging he had stopped making required maintenance payments as of January 1, 2004. She also filed a motion to dismiss Robert's petition to terminate or reduce maintenance. Anna contended maintenance was not modifiable, based on the language in paragraphs 3.1 and 3.3 of the Agreement, and because it was maintenance in gross.

On September 2, 2004, the trial court granted Anna's motion to dismiss Robert's petition. The court found Robert's obligation was maintenance in gross because the sum of $360,000 was vested in Anna at the time the judgment was entered. The court found paragraphs 3.1 and 3.3 contained "clear and precise language" precluding any modification. Paragraph 5.5, the court said, was a "general catch-all provision" that did not override "the more detailed, specific and agreed to language of the maintenance provisions in paragraph 3.1 and 3.3."

On September 7, 2004, the trial court entered a rule against Robert

to show cause why he should not be held in indirect civil contempt of court for his failure to make past-due and prospective maintenance payments.

At the hearing on the return of the rule to show cause, the court found Robert in indirect civil contempt of court for his failure to pay maintenance. In an order entered September 22, 2004, the court found Robert had no good cause or justification for his refusal to pay maintenance and granted him seven days to pay $33,750 in past-due maintenance plus statutory interest. Robert paid the maintenance arrearage as ordered. The court subsequently entered an order finding Robert had purged himself of the finding of contempt by complying in full with the purge terms.

Robert filed a motion for reconsideration, which was denied by the trial court on November 16, 2004.

On October 13, 2004, Anna filed a "Petition for Attorneys' Fees and Costs," pursuant to section 508 of the Act (750 ILCS 5/508 (West 2002)), for fees incurred in her enforcement of a judgment.[2] Robert filed a written response to the petition. On November 17, 2004, the court ordered Robert to pay Anna's attorney fees and costs of litigation incurred through October 1, 2004, in the amount of $9,640.

Robert filed a notice of appeal in this court appealing the orders entered on September 2, 2004, September 22, 2004, November 16, 2004, and November 17, 2004.

Robert filed a "Motion for Stay of Enforcement and For Other Relief" in the trial court, asking the court to find unconstitutional the last sentence of section 413(a) of the Act. Section 413(a) provides that an order for child support or maintenance shall not be suspended or the enforcement thereof stayed pending an appeal. 750 ILCS 5/413(a) (West 2002). He asked to be allowed to deposit prospective maintenance payments in a trust account or for a preliminary injunction against Anna. The trial court denied the motion on January 31, 2005.

On February 2, 2005, Robert filed in this court a "Motion for Stay of Enforcement and for Other Relief." The motion was allowed by another division of this court on February 25, 2005. Robert filed a second notice of appeal, appealing the trial court's January 31, 2005, order. Anna filed a "Motion for Rehearing and/or Reconsideration" in this court, which was denied.

---

[2] Anna also petitioned for, and was awarded, $7,500 in interim attorney fees, which are not at issue in this appeal.

DECISION

## I. MAINTENANCE

Robert contends the trial court erred in dismissing his petition to terminate or reduce maintenance. He contends: (1) paragraph 5.5 of the Agreement specifically allows the parties to modify maintenance; (2) the court erred in classifying the payments as maintenance in gross; (3) the court disregarded the tax treatment of the payments; (4) there was no "clear and express" language excluding the statutory termination events, pursuant to section 510(c) of the Act; (5) the court's interpretation of the Agreement leads to a "grossly unconscionable, absurd result"; and (6) alternatively, the court erred in failing to find the language in the Agreement ambiguous and failing to take parol evidence to resolve the ambiguity.

■ Interpreting a marital settlement agreement is a matter of contract construction. *In re Marriage of Dundas*, 355 Ill. App. 3d 423, 823 N.E.2d 239 (2005). We seek to effectuate the parties' intent at the time the agreement was executed. *In re Marriage of Hildebrand*, 166 Ill. App. 3d 795, 798, 520 N.E.2d 995 (1988). Unless the agreement is incomplete or ambiguous, we look to the language of the agreement itself to determine the parties' intent. *Hildebrand*, 166 Ill. App. 3d at 798. The terms of the agreement must be given their plain and ordinary meaning. *Dundas*, 355 Ill. App. 3d at 426.

■ We first discuss Robert's contention that paragraph 5.5 allows the court to modify his maintenance obligation based on a change of circumstances between the parties. We believe paragraph 5.5, by its express language, has no bearing on this case. The section states: "[t]he provisions of this agreement may be modified or rescinded *by the written consent of both parties*; however, the parties agree that they will not petition the court for a modification unless there is a substantial change in circumstances of the parties." (Emphasis added.) The second clause in the sentence cannot be separated from the first clause. Paragraph 5.5 applies only to a situation where *both* parties agree to petition the court for a modification of the agreement. We do not read "both parties" to mean "either party." Here, Anna did not consent in writing to Robert's petition; she contested it and asked that it be dismissed. Paragraph 5.5 is irrelevant to our decision.

We are left with the provisions in article III of the Agreement. Article III says nothing about the parties' ability to modify the Agreement. Paragraph 3.3 refers to postpayment termination of maintenance, but does not mention modification.

■ Robert contends the trial court's characterization of his maintenance obligation as maintenance in gross was in error. He says

the maintenance payments were periodic payments for a fixed period of time, as in *In re Marriage of Harris*, 284 Ill. App. 3d 389, 390-92, 672 N.E.2d 383 (1996). We agree with the trial court's interpretation.

Section 504(a) of the Act allows a trial court to award a "temporary or permanent maintenance award for either spouse in amounts and for periods of time as the court deems just, without regard to marital misconduct, in gross or for fixed or indefinite periods of time." 750 ILCS 5/504(a) (West 2002). Under section 510(c), unless the parties otherwise agree in writing or the trial court otherwise approves, maintenance automatically terminates when: (1) either party dies, (2) the party receiving maintenance remarries, or (3) the party receiving maintenance cohabits with another person on a resident, continuing conjugal basis. 750 ILCS 5/510(c) (West 2002).

In *In re Marriage of Freeman*, 106 Ill. 2d 290, 298, 478 N.E.2d 326 (1985), our supreme court defined maintenance in gross as a "nonmodifiable sum certain to be received by the former spouse regardless of changes in circumstances." Maintenance in gross, like the pre-Act "alimony in gross," is in the nature of a property settlement and creates a vested interest in the recipient. *Freeman*, 106 Ill. 2d at 296. It does not terminate automatically on the remarriage of the receiving party. *Freeman*, 106 Ill. 2d at 299.

In *Freeman*, the original maintenance provision provided the payments would cease upon death, remarriage, or continuous cohabitation. The trial court modified the judgment to state:

" 'For maintenance in gross of the Petitioner the Respondent shall pay the sum of Twenty-seven Thousand Dollars ($27,000) at the rate of Seven Hundred and Fifty Dollars ($750) per month for a total of thirty-six (36) months.'

*** 'Said payments to be terminable upon the death of either Petitioner or Respondent.' " *Freeman*, 106 Ill. 2d at 294-95.

The court held the modified award was for maintenance in gross because it used the term "maintenance in gross" and omitted the language regarding termination because of remarriage. The court held the trial court "approved" this arrangement under the authority given the court by section 510(b) of the Act (now section 510(c)). *Freeman*, 106 Ill. 2d at 299. The death contingency clause in the modified agreement did not change the status of the maintenance award. The court held:

"Were we to hold that maintenance in gross could never be combined with any other conditions that might terminate it, we would destroy much of the flexibility which the Act was intended to foster. Instead, we hold that this award is maintenance in gross, with all the characteristics of maintenance in gross, except where expressly stated otherwise." *Freeman*, 106 Ill. 2d at 300.

■ Here, paragraph 3.1 awards a specific amount of maintenance, $360,000, payable to Anna in 96 monthly installments of $3,750. The primary distinguishing characteristic between periodic maintenance and maintenance in gross is the definite sum and vesting date of maintenance in gross. *Hildebrand*, 166 Ill. App. 3d at 799.

In addition, the language in paragraph 3.3 providing that Robert's maintenance obligation terminates only after "the payment of all monies due to Wife are paid in full, regardless of any other changed circumstances of the parties," clearly conveys the presence of maintenance in gross. Because the maintenance obligation is in gross, there is no need to specify that maintenance is nonmodifiable; maintenance in gross is, by definition, nonmodifiable. *Freeman*, 106 Ill. 2d at 296.

Robert compares the language in the Agreement to that of the agreement in *In re Marriage of Snow*, 322 Ill. App. 3d 953, 954, 750 N.E.2d 1268 (2001). The agreement in *Snow* stated that " 'maintenance shall terminate after the above payments have been made or earlier upon order of the court.' " *Snow*, 322 Ill. App. 3d at 957. The court held the agreement did not limit termination of maintenance to only those two instances, and the "conjugal cohabitation" section of the Act applied. *Snow*, 322 Ill. App. 3d at 957. In contrast, the Agreement in this case states that maintenance shall terminate *"only* after the payment of all monies due to Wife are paid in full, *regardless of any other changed circumstances of the parties."* (Emphasis added.) This language clearly rules out termination upon the statutory termination events listed in section 510(c) because the parties agreed maintenance would terminate only after the money due to Anna was paid in full.

Robert's remaining arguments for modification of the Agreement are unpersuasive. He contends the trial court erred in characterizing the payments as maintenance in gross given the Agreement's tax treatment of the payments. The Internal Revenue Code allows an individual to deduct alimony or separate maintenance payments only if there is no liability to make such payments after the death of the payee spouse. 26 U.S.C. §§ 71, 215 (2000). Robert contends the trial court's characterization renders the deduction provisions meaningless because the Agreement does not say the obligation terminates at Anna's death.

The issue of the tax treatment of the maintenance payments is not a matter for this court. Although the Agreement does not say the maintenance obligation terminates at the death of the payee spouse, maintenance in gross may terminate at death without losing its "in gross" character. *Freeman*, 106 Ill. 2d at 299-300. The inclusion of the

tax treatment provisions does not change the characterization of the maintenance as "in gross." See *In re Marriage of Morreale*, 351 Ill. App. 3d 238, 242-43, 813 N.E.2d 313 (2004) (the parties' mistake about the tax consequences of maintenance payments did not defeat the characterization of the payments).

Robert further contends the interpretation given the Agreement by the trial court would be a grossly unconscionable provision that never would have been approved by any court. He says it would be unreasonable to assume the Agreement obligated Robert to pay Anna maintenance for eight years, regardless of her subsequent remarriage or children, or the fact that the parties cohabited only for six years of their marriage. Again, we look to the plain language of the contract. The parties agreed that Robert would pay a definite sum of maintenance to Anna, terminating only after being paid in full, "regardless of any other changed circumstances of the parties." Robert cannot sidestep the express language of the contract, which clearly provides for an in-gross maintenance award that is nonmodifiable.

Alternatively, Robert contends the terms of the Agreement are ambiguous, and the trial court should have held a hearing and taken parol evidence to interpret the contract. Where the terms of a marital settlement agreement are unambiguous, we determine the parties' intent solely from the language of the instrument. *In re Marriage of Wassom*, 352 Ill. App. 3d 327, 330-31, 815 N.E.2d 1251 (2004). Where the language is ambiguous, parol evidence may be used to decide what the parties intended. *Dundas*, 355 Ill. App. 3d at 426. Language is not ambiguous simply because the parties disagree on its meaning. *Wassom*, 352 Ill. App. 3d at 331.

We do not believe the contract terms are ambiguous. Section 5.5 allows the parties to modify or rescind the Agreement only with the written consent of both parties. No other section of the Agreement allows for modification, and the maintenance terminates only when paid in full, a clear indication the parties intended maintenance in gross. There was no need for evidence beyond the contract terms.

## II. ATTORNEY FEES

Robert raises two issues regarding the award of $9,640 in attorney fees. First, Robert says the court's finding that there was no compelling cause or justification for his violation of the judgment for dissolution was against the manifest weight of the evidence. Second, he says he should not be responsible for all of the fees when only a small portion of the fees was related to enforcement of the maintenance order.

■ Anna's fee petition requested attorney fees pursuant to sections 508(a) and 508(b). Although Anna says the fee award was pursu-

ant to both sections, the trial court's order states fees were awarded pursuant to section 508(b), and the transcript of the hearing is consistent with that finding. We restrict our analysis to section 508(b).

Section 508(b) provides:

> "In every proceeding for the enforcement of an order or judgment when the court finds that the failure to comply with the order or judgment was without compelling cause or justification, the court shall order the party against whom the proceeding is brought to pay promptly the costs and reasonable attorney's fees of the prevailing party." 750 ILCS 5/508(b) (West 2002).

Under section 508(b), a court has no discretion as to whether to award attorney fees, only whether the failure to pay was without cause or justification. *In re Marriage of Goldberg*, 282 Ill. App. 3d 997, 1003, 668 N.E.2d 1104 (1996). A court may deny attorney fees and costs where the failure to pay was justified, or the failure was not willful and wanton. *Goldberg*, 282 Ill. App. 3d at 1003. An award of attorney fees will not be overturned in the absence of a clear abuse of discretion by the trial court. *In re Marriage of Garelick*, 168 Ill. App. 3d 321, 328-29, 522 N.E.2d 738 (1988).

Robert contends he demonstrated a compelling justification for noncompliance with the court's order. He cites as evidence his petition for termination or modification, the fact that he deposited the payments in an escrow account, and his emergency motions filed in the trial court. In the motions, he asked the trial court to reconsider its decision or make the findings under Supreme Court Rule 308(a) (155 Ill. 2d R. 308(a)) to allow him to take an immediate, interlocutory appeal. He also proposed alternative arrangements to secure the past-due and prospective maintenance payments during the pendency of his appeal. His concern was that Anna would consume or otherwise dispose of the maintenance payments and he would be unable to recoup them if he ultimately prevailed in the appeal.

Robert compares his actions to those of the respondents in *Goldberg* and *Garelick*. In *Goldberg*, the court affirmed the trial court's denial of section 508(b) attorney fees because the trial court noted the husband's reduced maintenance payments were " 'reasonable under the circumstances,' " and " 'there was no finding of wilful failure to comply with any prior Order or Judgments of this Court.' " *Goldberg*, 282 Ill. App. 3d at 1004. In *Garelick*, the court affirmed the trial court's denial of fees because the trial court expressly refused to find the respondent in contempt and did not make the necessary finding of lack of cause or justification. *Garelick*, 168 Ill. App. 3d at 328.

■ Where a trial court finds a party's failure to pay was without cause or justification, the award of reasonable attorney fees and costs

is mandatory. *Garelick*, 168 Ill. App. 3d at 328. Because Robert was found in contempt for failing to comply with the dissolution order, the trial court correctly found Anna was entitled to an award for attorney fees incurred in connection with the enforcement of that order. *In re Marriage of Wiley*, 199 Ill. App. 3d 223, 233, 556 N.E.2d 788 (1990).

At the hearing in this case, the trial court specifically found Robert's failure to pay court-ordered maintenance was "willful, contumacious, and *** there is no good cause or justification for his failure to pay." Robert ceased making maintenance payments as of December 31, 2003. Regardless of whether he deposited the subsequent payments in an escrow account or filed a petition to terminate or modify maintenance, Robert wilfully ignored his court-ordered maintenance obligation. After the trial court dismissed his petition, Robert still refused to pay the past-due maintenance until he was found in indirect civil contempt of court for refusal to pay. The trial court's finding that Robert had no compelling cause or justification for the failure to comply with the judgment was not an abuse of discretion.

Robert contends the amount of the fee award was incorrect because only approximately $2,000 of the $9,640 in fees were related to enforcement of the court's order.

In *Wiley*, 199 Ill. App. 3d at 234, the respondent argued the trial court failed to make a distinction in its fee award between time spent on contempt versus noncontempt issues. This court affirmed the trial court's fee award based on a review of the record and the trial court's findings. The court said:

> " '5.7 hours were spent by petitioner's working on the case immediately following the Judgment for Dissolution but before the respondent began overtly hedging on his obligations thereunder, through November 3, 1988. 12.7 hours were spent thereafter through the May 25, 1989 hearing. 19.7 more hours were spent through the date of this hearing. The total of 38.1 hours was necessarily incurred in petitioner's pursuing the completion of the settlement between the parties and attempting to force the respondent to comply with the agreement signed on September 14, 1988. This bad faith prompts the Court to assess petitioner's attorney fees in total against the respondent as a sanction for the contempt.' " *Wiley*, 199 Ill. App. 3d at 234.

In this case, Robert would have us limit the fee award to time spent on Anna's petition for rule to show cause. He would disallow fees related to Robert's petition to terminate or modify, Anna's motion to dismiss Robert's petition, and Robert's emergency motions.

We do not believe the trial court abused its discretion in allowing

the full fee award. Robert ceased making maintenance payments in January 2004. According to Anna's fee petition, from April 8, 2004, through October 1, 2004, 17.5 hours were spent by Anna's attorneys on matters related to the various petitions and responses by the parties. As in *Wiley*, all of these fees are related to enforcement of the judgment for dissolution. Robert unilaterally, against court orders, stopped making payments and did not fulfill his obligation until he was found in contempt of court. He had no reasonable basis for his petition to terminate or modify maintenance, as the terms of the contract clearly do not provide for modification and only provide for termination when the maintenance payments are paid in full. The fee award was not an abuse of the trial court's discretion.

## III. STAY OF ENFORCEMENT

■ Robert contends the last sentence of section 413(a) of the Act is unconstitutional. Section 413(a) states, in part, that an order for child support or maintenance shall not be suspended or the enforcement thereof stayed pending an appeal. 750 ILCS 5/413(a) (West 2002). On February 2, 2005, Robert filed in this court a "Motion for Stay of Enforcement and for Other Relief." The motion was allowed on February 25, 2005.

This issue is moot. Generally, a court will not consider moot or abstract questions or render advisory decisions. *In re Robert S.*, 213 Ill. 2d 30, 45, 820 N.E.2d 424 (2004). An appeal is moot if no actual controversy exists or if events have occurred making it impossible to grant the complaining party effectual relief. *In re Marriage of Peters-Farrell*, 216 Ill. 2d 287 (2005). The existence of a real dispute is not a mere technicality but, rather, a prerequisite to the exercise of this court's jurisdiction. *Peters-Farrell*, 216 Ill. 2d at 291. Because a stay was granted in this case, there is no controversy and we have no jurisdiction to decide the issue. We do, however, terminate the stay.

## CONCLUSION

We affirm the rulings of the trial court dismissing Robert's petition to terminate or modify maintenance, finding he had no justification for his refusal to pay maintenance, denying his motion for reconsideration, ordering him to pay $9,640 in attorney fees, and denying his motion to find section 413(a) of the Act unconstitutional.

Affirmed.

HALL and GARCIA, JJ., concur.