2023 IL App (1st) 211452-U

No. 1-21-1452

Order filed September 6, 2023

THIRD DIVISION

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

|  |  |  |
|---|---|---|
| *In re* MARRIAGE OF PERLA OTERO, | ) | Appeal from the Circuit Court |
|  | ) | of Cook County. |
| Petitioner-Appellant, | ) |  |
|  | ) | No. 2015 D 937 |
| and | ) |  |
|  | ) | The Honorable |
| LUIS A. OTERO, | ) | David Haracz, |
|  | ) | Judge Presiding. |
| Respondent-Appellee. | ) |  |

JUSTICE D.B. WALKER delivered the judgment of the court.
Presiding Justice Reyes and Justice McBride concurred in the judgment.

**ORDER**

¶ 1     *Held*: We reverse the trial court's order with regard to modification of maintenance, indirect civil contempt, and attorney fees. We remand to the trial court for reconsideration of the motion to modify maintenance with retirement payments treated as assets rather than income, as well as for a finding of contempt with a purge amount and to determine the amount of past due maintenance and section 508(b) attorney fees to be paid to the former wife.

¶ 2     Petitioner-Appellant Perla Otero (Perla) and Respondent-Appellee Luis Otero (Luis) were married in 1986 and that marriage continued for over 30 years. Perla stayed home and out of the job market to care for their three children for 16 of those years. In 2015, Perla filed for

dissolution of marriage. The two entered into a marital settlement agreement (MSA) that was incorporated into the dissolution order entered by the trial court and that required Luis to pay monthly maintenance to Perla. Luis subsequently retired and moved to modify maintenance due to the change in circumstances resulting from his retirement. While the motion to modify was pending and after he and Perla each began to receive payments from his retirement benefits, Luis ceased paying maintenance. Perla filed a motion for a finding of indirect civil contempt to compel Luis to pay maintenance until such time as the trial court ruled on the motion to modify. Perla also submitted a petition for costs and fees incurred in the process of attempting to enforce Luis' maintenance obligation, as well as for costs and fees based on her inability to pay. The trial court granted Luis' motion and modified the maintenance award to $0. The court denied Perla's motions. We reverse the trial court's order and remand for further proceedings.

¶ 3                                    BACKGROUND

¶ 4        On February 2, 2015, Perla filed for dissolution of marriage. On April 3, 2019, after 9 days of trial, a judgment for dissolution was entered that incorporated an MSA. The MSA provided, among other things, that 1) Luis would pay Perla "modifiable and terminable permanent guideline maintenance" of $1,598 per month beginning May 1, 2019; and 2) Luis and Perla would each receive 50 percent of the payment from Luis' Policeman's Annuity & Benefit Fund Pension Plan with the City of Chicago. The MSA specified:

        "The Wife's maintenance is permanent maintenance but which is otherwise modifiable
        as to amount but not duration, upon the filing of a Motion for Modification and upon a
        material and substantial change in circumstances. The maintenance is also terminable
        upon the first of the following termination events shall [sic] occur namely, upon the

death of either party, Wife's cohabitation upon a resident and/or continuous conjugal basis with a person of the opposite sex, or upon Wife's remarriage or until terminated by order of the court, whichever shall first occur."

¶ 5    On February 14, 2020, at the age of 57, Luis retired from his job with the Chicago Police Department and on February 25, 2020, he filed a "Motion to Modify Maintenance and Commence Retirement Benefits." In the motion, Luis laid out his change in income due to his retirement, as well as his and Perla's imminent receipt of his retirement benefits. Luis continued paying maintenance until May 2020, when pension payments began, and thereafter he ceased payment without being granted leave of court to do so.

¶ 6    On July 2, 2020, Perla filed a petition for indirect civil contempt seeking, among other things, to have Luis held in indirect civil contempt until such time as he paid his overdue maintenance for May, June, and July 2020 with interest. On July 30, 2020, Luis filed his response to the contempt petition. In it, he asserted that if his motion to modify maintenance had been heard in a timely fashion, he would only be responsible for paying half of his pension benefit to Perla, but, in addition to that, he was "unable to cover his own personal and household expenses while paying both pension and maintenance since he is now retired." Luis' assertion of inability to pay cited no specific numbers, but merely stated generally that he could not afford to pay.

¶ 7    On January 20, 2021, the trial court held an evidentiary hearing on the motion for modification of maintenance and the contempt petition. In that hearing, Luis testified that his sole source of income was half of his pension benefit because the other half went to Perla in the dissolution decree. That half of the pension benefit came to $3,433.21 per month. Luis' mortgage was $1,555 per month. Luis stated that the pension benefit covered his monthly bills

and "[left him] $300 to $400 a month for [himself]." At an unspecified time after the dissolution decree, Luis received "a little bit over" $20,000 from the sale of a condo he and Perla owned in Florida. In or around April or May 2020, he received a partial refund from his pension amounting to $25,450 that was placed in his deferred compensation account. When asked if his "Compushare trust account" contained $108,141 worth of stocks as of July 30, 2020, Luis confirmed that that was "probably correct." He had not made any withdrawals since April 2020, but he was unsure of the balance of that account in July 2020 or at the time of the hearing. Luis stated that he owed approximately $27,000 on his mortgage, $15,000 in credit card debt, and had taken out a loan from his deferred compensation account for an unspecified dollar amount in January 2020 to cover his expenses until his pension payments began in April 2020 and paid retroactive to his February 2020 retirement date. Luis testified that he had not paid off that loan because he was required to pay it in full if he was going to pay it off and he had not had the funds available to do so. Luis testified that he had intended to put the money from the Florida condo toward paying down his debts, but had put it aside for attorney fees "and everything else."

¶ 8 On February 4, 2021, Perla filed a petition for attorney fees seeking fees under 750 ILCS 5/503(j), 5/508(a), and 5/508(b).

¶ 9 On March 2, 2021, the trial court entered the order from which this appeal is taken, which held in pertinent part:

> "G. Respondent testified as to various injuries and medical issues that prevent him from working further. However, he offered no medical documentation or evidence beyond his testimony;
>
> * * *

K. Respondent's retirement was voluntary. He had the capacity and ability to continue his employment with the Chicago Police Department.

L. Respondent's monthly gross decreased from approximately $9,333/month to $3,433.21/month. Because this was a voluntary retirement, this substantial change in income would in and of itself not be a basis for the modification of his maintenance. Reductions in the payor's ability to pay maintenance that are not fortuitous cannot be used to modify maintenance obligations. [citations omitted]

M. However, Petitioner's income has substantially increased with her receipt of the pension benefits. Therein, there is a finding of substantial change in circumstances that triggers a modification of maintenance pursuant to the statute;

N. With the addition of the pension income, Petitioner grosses approximately $78,500 per year. Pursuant to the statutory guidelines, even if the Court used the Respondent's $116,000 income from the time of his retirement, Respondent would not have an obligation to pay maintenance;

O. Respondent was not willful or contumacious in his failure to pay maintenance after his retirement and upon the parties' receipt of retirement benefits;

* * *

WHEREFORE, IT IS HEREBY ORDERED:

1. Respondent's Motion to Modify Maintenance and Commence Retirement Benefits is granted;

2. Respondent's maintenance obligation is modified to $0 effective May 1, 2020;

* * *

5

4. Petitioner's Petition for Indirect Civil Contempt of Court for Failure to Pay Maintenance and for Proof of Life Insurance, for Attorney Fees and Other Relief is denied as to Respondent's maintenance obligation. * * *

6. Petitioner's request for 508(a) and 503(j) fees is denied;"

¶ 10    Several additional postjudgment motions followed. On March 29, 2021, Luis filed a motion for reconsideration of the March 2, 2021 order. Though the exact date is unclear because the motion is missing from the record, Perla filed a motion for sanctions against Luis sometime between March 2, 2021 and June 2, 2021. On June 2, 2021, Luis filed a motion for sanctions against Perla. On June 4, 2021, Perla's motion for sanctions against Luis and Luis' motion for reconsideration were both denied. On September 9, 2021, Perla filed another motion for sanctions against Luis. On October 13, 2021, a final order was entered that included the agreed withdrawal of both parties' motions for sanctions against the other. On November 8, 2021, a notice of appeal was timely filed and this appeal follows.

¶ 11                                                ANALYSIS

¶ 12    Perla specifically appeals those holdings of the March 2, 2021 order contained under subsections 1, 2, 4, and 6. She also asserts that she is appealing subsections M, N, and O, but those are factual findings underlying the orders that we will review, and are not separately appealable. Her primary argument is that the trial court erred in several ways in granting Luis' motion to modify maintenance. In the alternative, Perla argues that even if modification was warranted, modification to $0 was inappropriate because Luis is still able to pay. Perla argues, without any specificity, that the trial court erred when it declined to find Luis to be in indirect civil contempt for his failure to pay maintenance. Perla also argues that the trial court erred by denying her petition for fees and costs associated with her efforts to enforce the maintenance

award via an indirect civil contempt finding. Perla suggests that we award her fees and costs associated with this appeal, and that we impose sanctions against Luis. Luis recommends we impose sanctions against Perla as well. Further, Luis asserts that this court lacks jurisdiction, both because this appeal is not timely and because the order being appealed was not a final order. We will examine our jurisdiction before proceeding to the arguments on the merits.

¶ 13                                                 I. Jurisdiction

¶ 14        Luis raises two arguments regarding our jurisdiction. First, he contends that the appeal was untimely filed. Second, he argues that the order being appealed was not a final order. We reject both arguments and find that we have jurisdiction to hear this appeal.

¶ 15                                                 A. Timeliness

¶ 16        Luis and Perla disagree as to whether this appeal was timely filed and therefore whether the court has jurisdiction to hear this appeal. Under Illinois Supreme Court Rule 303:

> "The notice of appeal must be filed *** within 30 days after the entry of the final judgment appealed from, or, if a timely posttrial motion directed against the judgment is filed, whether in a jury or nonjury case, within 30 days after the entry of the order disposing of the last pending postjudgment motion directed against that judgment or order. A judgment or order is not final and appealable while a Rule 137 claim remains pending unless the court enters a finding pursuant to Rule 304(a)." Ill. S. Ct. R. 303 (eff. July 1, 2017).

¶ 17        Perla argues that this court has jurisdiction because the trial court's final order was entered October 13, 2021 and her notice of appeal was filed 26 days later, on November 8, 2021, and was therefore timely. Luis argues that the March 2, 2021 order constituted a final judgment

and that his March 29, 2021 motion for reconsideration did not extend the window for appeal because it was a request for reconsideration of a ruling on a postjudgment motion.

¶ 18    Even assuming we accept that a post-decree petition such as this qualifies as a postjudgment motion under Rule 303, Luis' argument does not account for Illinois Supreme Court Rule 274. Rule 274 establishes that where a final judgment order is modified pursuant to a postjudgment motion, the order modifying the final judgment order becomes the new final judgment and postjudgment motions against that new final order toll the window in which a party can timely appeal. Ill. S. Ct. R. 274 (eff. July 1, 2019). The trial court's March 2, 2021 order modified the maintenance terms of the underlying dissolution judgment. Accordingly, the March 29, 2021 motion for reconsideration extended the time in which Perla could appeal the decision. That motion was disposed of in an order entered on June 4, 2021 which also disposed of a pending motion for sanctions against Luis.[1] The motion for reconsideration alone extended the window for timely appeal to July 6, 2021.[2] However, when July 6, 2021 arrived, a motion for sanctions against Perla, filed June 2, 2021, was still pending.

¶ 19    Illinois Supreme Court Rule 137 (eff. Jan 1, 2018) provides the requirement that every document of a party represented by an attorney shall be signed by that attorney. In doing so, that attorney certifies that he or she has read the document and "that, to the best of his knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good-faith argument for the extension, modification, or

---

[1]    While the record on appeal does not contain Perla's motion for sanctions against Luis, it appears based on a notice of filing contained in the record that it was filed on April 9, 2021. As the specific content of Perla's motion is not relevant to this appeal, its omission from the record has no impact on the outcome of this appeal.

[2]    This date reflects a period of 32 days rather than the 30 provided by the rule, as the 30th day would have fallen on a weekend and the 31st on a court holiday.

reversal of existing law, and that it is not interposed for any improper purpose." *Id.* The rule provides that proceedings alleging violations of this rule constitute a separate claim within the same civil action and must be brought "within 30 days of the entry of final judgment, or if a timely post-judgment motion is filed, within 30 days of the ruling on the post-judgment motion." *Id*. In the case at bar, both Rule 137 motions were filed after Luis' motion for reconsideration and before the ruling on that motion for reconsideration, so both were timely and pending as of the June 4 ruling on the motion for reconsideration.

¶ 20    While an appeal may be filed in instances where a judgment dispenses with some, but not all, claims in a case, such an appeal may only be pursued where the court has made an explicit finding that "there is no just reason for delaying either enforcement or appeal or both." Illinois Supreme Court Rule 304(a) (eff. March 8, 2016). Our court has found explicitly that this restriction applies when a Rule 137 motion for sanctions is pending. *F.H. Prince & Co. v. Towers Financial Corp.*, 266 Ill. App. 3d 977 (1994). The trial court did not provide Rule 304(a) language at any time, so its rulings were not final and appealable until such time as the Rule 137 claims were resolved. Perla's motion for sanctions against Luis was denied in the June 4, 2021 order, but Luis' motion for sanctions against Perla remained pending. Perla then filed another motion for sanctions, including a Rule 137 allegation, against Luis on September 9, 2021. The October 13, 2021 order notes that as part of that order, both parties withdrew their motions for sanctions against one another. The October 13, 2021 order thereby resolved the final claims in the underlying case and tolled the period for appeal following final judgment, through November 12, 2021. The instant appeal was filed November 8, 2021 and was therefore timely.

¶ 21                                    B. Finality

¶ 22        Luis argues that this court lacks jurisdiction, because the order being appealed is not a final order since a Qualified Domestic Relations Order (QDRO) is still pending in the court below, and the appeal was not filed as an interlocutory appeal. Luis also argues that the underlying order is not final, because Perla has not signed a quitclaim deed for the marital residence, as contemplated in the judgment for dissolution. However, he cites no legal precedent to support this argument, nor does he develop it further than a conclusory statement, so that argument is waived. Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020) (argument in appellate brief must be supported by citation); *People v. Ward*, 215 Ill. 2d 317, 332 (2005); *In re Marriage of Bates*, 212 Ill. 2d 489, 517 (2004) ("A reviewing court is entitled to have issues clearly defined with relevant authority cited"); *Rosier v. Cascade Mountain, Inc.*, 367 Ill. App. 3d 559, 568 (2006) (holding that, by failing to offer any supporting legal authority or reasoning, plaintiffs waived consideration of their theory for asserting personal jurisdiction over defendants); *Ferguson v. Bill Berger Associates, Inc.*, 302 Ill. App. 3d 61, 78 (1998) ("it is not necessary to decide this question since the defendant has waived the issue" by failing to offer case citation or other support as Supreme Court Rule 341 requires).

¶ 23        "An order is final and appealable if it terminates the litigation between the parties on the merits or disposes of the rights of the parties, either on the entire controversy or a separate part thereof." *In re Marriage of Gutman*, 232 Ill. 2d 145, 151 (2008). Luis cites to *In re Marriage of Petraitis*, 263 Ill. App. 3d 1022 (1993), for the proposition that the order being appealed is non-final because not all rights had been determined at the time of the order being appealed. In *Petraitis*, this court was examining whether the circuit court had retained jurisdiction to modify a QDRO. *Id.* at 1037-38. While this court laid out several possible arguments in favor

of jurisdiction, the primary basis for finding jurisdiction articulated in *Petraitis* was that because the QDRO had not been entered, the issue of the division of those assets had not been finally determined and so the lower court's order was never final. *Id*. at 1038.

¶ 24    Perla argues that a subsequent case, *In re Marriage of Platt*, 2015 IL App (2d) 141174, explicitly overruled *Petraitis* and, therefore, it is inapplicable. While it is true that *Platt* holds that *Petraitis* was incorrect, *Id*. at ¶ 17, one order of this appellate court cannot overrule another. *Gillen v. State Farm Mut. Auto Ins. Co.*, 215 Ill. 2d 381, 392 n.2 (2005). However, unlike the federal court system, our appellate court is unitary, so a contradictory decision in another district of this court does not represent a split, as it might in the federal judiciary, but merely an unsettled issue in this court as yet unaddressed by our supreme court. *People v. Granados*, 172 Ill. 2d 358, 372 (1996). In *Platt*, this court reasoned that "the entry of a QDRO is part of the execution of an existing judgment" and therefore is not a bar to the finality of that existing judgment.

¶ 25    In the case at bar, the QDROs regarding the division of Perla's retirement benefits with Sprint and Comcast had yet, at the time of appeal, to be signed and entered, but the division of those retirement benefits had been determined and clearly recorded in the MSA that was incorporated into the judgment of dissolution of marriage. These facts are similar enough to both *Petraitis* and *Platt* to make neither case more clearly applicable. However, as the division of the retirement assets has already been determined, we conclude that the *Platt* approach is more sensible in the case at bar, and the order being appealed is in fact a final order. Were it the case that the language anticipating a QDRO/QILDRO had been so vague as to say that the benefits would be split between the parties in respective percentages to be determined in a future QDRO/QILDRO to come, the parties' rights regarding those assets would be as yet

undetermined and the order would be non-final. Here, though, the MSA fully determined the division of the assets and all that remained was having the QDROs drawn up and entered. The order being appealed is a final order, and accordingly, this court possesses the necessary jurisdiction to review the issues on appeal.

¶ 26                                    II. Modification of Maintenance

¶ 27        Perla argues that the trial court erred when determining whether a modification to the existing maintenance award was warranted 1) by treating Perla's receipt of her share of Luis' pension benefit as income in determining that a substantial change in circumstances had occurred; 2) by failing to conduct a proper analysis of the necessary factors under Sections 750 ILCS 5/510(a-5) (West 2020) and 750 ILCS 5/504 (West 2020); 3) by modifying the maintenance award based on circumstances not specifically established in the dissolution agreement; 4) by failing to impute Luis' former income to him despite allegedly concluding that his retirement was in bad faith; and 5) by concluding that the parties' relative financial circumstances warranted a modification of the maintenance award to $0. Perla argues in the alternative that, even if a substantial change occurred, Luis should still have to pay because he is capable of doing so and did not meet his burden to prove otherwise. As we reverse and remand based on Perla's first argument, we need not examine the others.

¶ 28        "A trial court's determination regarding whether a substantial change in circumstances has occurred is reviewed under the abuse of discretion standard." *In re Marriage of Bostrom*, 2022 IL App (1st) 200967, ¶ 39. "[T]he decision to modify a maintenance award is within the trial court's discretion." *Id.* "A trial court abuses its discretion when the ruling is arbitrary, fanciful, unreasonable, or where no reasonable person would take the view the trial court adopted." *Id.* The trial court's factual findings are reviewed under the manifest weight of the evidence

standard. *Id.* "A finding is considered against the manifest weight of the evidence where the opposite conclusion is clearly evident or the court's findings are unreliable, arbitrary, and not based on the evidence." *Id.*

¶ 29    Section 510 has been amended since the order underlying this appeal was entered, but the new version is irrelevant to this appeal. Per 750 ILCS 5/801:

> "In any action or proceeding in which an appeal was pending or a new trial was ordered prior to the effective date of this Act, the law in effect at the time of the order sustaining the appeal or the new trial governs the appeal, the new trial, or any subsequent appeal or trial."

¶ 30    Without any language accompanying the May 13, 2022 amendment in question to indicate which amendment or portion of the statute that particular amendment should apply to, the Section 801 language applicable to the entire act applies to the 2022 amendment as well. The version of section 510 that was in effect on November 8, 2021, when this appeal was filed, established that:

> "An order for maintenance may be modified or terminated only upon a showing of a substantial change in circumstances.
>
> * * *
>
> In all such proceedings, as well as in proceedings in which maintenance is being reviewed, the court shall consider the applicable factors set forth in subsection (a) of Section 504 and the following factors:
>
> (1) any change in the employment status of either party and whether the change has been made in good faith;

(2) the efforts, if any, made by the party receiving maintenance to become self-supporting, and the reasonableness of the efforts where they are appropriate;

(3) any impairment of the present and future earning capacity of either party;

(4) the tax consequences of the maintenance payments upon the respective economic circumstances of the parties;

(5) the duration of the maintenance payments previously paid (and remaining to be paid) relative to the length of the marriage;

(6) the property, including retirement benefits, awarded to each party under the judgment of dissolution of marriage, judgment of legal separation, or judgment of declaration of invalidity of marriage and the present status of the property;

(7) the increase or decrease in each party's income since the prior judgment or order from which a review, modification, or termination is being sought;

(8) the property acquired and currently owned by each party after the entry of the judgment of dissolution of marriage, judgment of legal separation, or judgment of declaration of invalidity of marriage; and

(9) any other factor that the court expressly finds to be just and equitable." 750 ILCS 5/510(a-5).

¶ 31    The factors enumerated in Section 504 are as follows:

"(1) the income and property of each party, including marital property apportioned and non-marital property assigned to the party seeking maintenance as well as all financial obligations imposed on the parties as a result of the dissolution of marriage;

(2) the needs of each party;

(3) the realistic present and future earning capacity of each party;

(4) any impairment of the present and future earning capacity of the party seeking maintenance due to that party devoting time to domestic duties or having forgone or delayed education, training, employment, or career opportunities due to the marriage;

(5) any impairment of the realistic present or future earning capacity of the party against whom maintenance is sought;

(6) the time necessary to enable the party seeking maintenance to acquire appropriate education, training, and employment, and whether that party is able to support himself or herself through appropriate employment;

(6.1) the effect of any parental responsibility arrangements and its effect on a party's ability to seek or maintain employment;

(7) the standard of living established during the marriage;

(8) the duration of the marriage;

(9) the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate, liabilities, and the needs of each of the parties;

(10) all sources of public and private income including, without limitation, disability and retirement income;

(11) the tax consequences to each party;

(12) contributions and services by the party seeking maintenance to the education, training, career or career potential, or license of the other spouse;

(13) any valid agreement of the parties; and

(14) any other factor that the court expressly finds to be just and equitable." 750 ILCS 5/504(a) (West 2020).

15

¶ 32    Perla argues that the trial court inappropriately considered Luis' pension payments to be income to her for the purposes of determining that a substantial change in circumstances had occurred. Perla cites to a number of cases that concern child support awards rather than maintenance awards. As the statutory guidelines for the two overlap in some part, but not in full, we are reluctant to look to such cases for guidance where more pertinent precedent exists. *Bostrom*, which was recently decided, examined issues very similar to those in this case. *Bostrom*, 2022 IL App (1st) 200967. Because *Bostrom* was recently decided, that the trial court did not have the benefit of its guidance when it ruled on the motion for modification. In *Bostrom*, as in the case at bar, a retirement contemplated in the MSA occurred and pension payments began on a pension that was divided as property in the MSA. *Id*. The spouse paying maintenance filed a motion to modify maintenance based on those pension payments and an increase in income on the part of the spouse receiving maintenance. *Id*. The question arose whether it was appropriate to treat the receipt of those pension benefits as a change in income. *Bostrom*, 2022 IL App (1st) 200967, ¶ 47.

¶ 33                    A. Luis' Retirement Benefits

¶ 34    Perla argues that Luis' retirement was contemplated at the time of the MSA and therefore his retirement and the consequent receipt of her share of his retirement benefits cannot constitute a substantial change in circumstances. Luis argues that under Section 510(a)(1) of the Act, whether an event was contemplated cannot be considered when determining whether a substantial change in circumstances has occurred. As we have established, this new version of the Act does not apply to this proceeding. The version that does apply did not contain the cited language. Under the analysis pertinent to the earlier versions of the statute, it was "axiomatic" that a substantial change in circumstances will not be found where the change in

16

financial circumstances was contemplated at the time of the MSA. *In re Marriage of Bernay*, 2017 IL App (2d) 160583, ¶ 18; *In re Marriage of Virdi*, 2014 IL App (3d) 130561, ¶ 30; *In re Marriage of Reynard*, 378 Ill. App. 3d 997, 1005 (2008).

¶ 35        *Bostrom* notes that the retirement at hand in that case was directly at issue in the MSA and cites to *Bernay*, emphasizing that in that case, the payor of the maintenance was 55 years old at the time of the divorce, so retirement was a "not-too-distant" one and directly at issue. *Bostrom*, 2022 IL App (1st) 200967, ¶ 48 (citing *In re Marriage of Bernay*, 2017 IL App (1st) 160583, ¶ 18). Luis was similarly situated, as he was 57 at the time of his retirement less than a year after the MSA was signed. *Bostrom* further notes the division of retirement benefits as an indicator that the retirement was contemplated at the time of the MSA. *Id.* The only relevant factual distinction on this point between *Bostrom* and the case at bar is that in *Bostrom* the payor's obligation to maintain a life insurance policy would terminate upon retirement or the termination of maintenance, whereas in the case at bar, Luis' obligation to maintain life insurance continues as long as his maintenance obligation continues. *Id.* It could be argued that this explicit mention of an occurrence at the moment of retirement distinguishes *Bostrom*, but it is a distinction without a difference. If we were to treat the splitting of pension benefits as income and that change in income as an event that could be contemplated by the parties, the decision to split those benefits inherently contemplates the occurrence of that event. Accordingly, in the case at bar, the MSA contemplated Luis' retirement and so that event cannot be considered a substantial change in circumstances.

¶ 36        The holding in *Bostrom* did not rely on contemplation alone, but also held that because the MSA effectuated the distribution of the parties' marital property, explicitly "including 'retirement and other accounts,' " the trial court "should not have included * * * receipt of the

17

agreed upon distribution from [the pension fund] in her income" when determining whether a substantial change had occurred. *Id.* ¶ 49. In the case at bar, the MSA similarly devotes a section to the distribution of retirement accounts within the "Division of Assets and Privacy Clause" article. Though the relevant QDROs/QILDROs may not have yet been entered for all of them, all of the parties' retirement accounts were distributed as marital property by the MSA. Accordingly, the trial court abused its discretion by treating receipt of that property as a change in Perla's income, and we reverse for reconsideration of Luis' motion to modify, with retirement benefits treated as assets rather than income in the substantial change analysis.

¶ 37                                   B. Luis' Change in Income

¶ 38        The fact remains that Luis' income was reduced by his retirement. Whether retirement constitutes a substantial change in circumstances depends on the facts of the particular case. *In re Marriage of Schrimpf*, 293 Ill. App. 3d 246, 251-52 (1997). The factors to be considered "include his age, health, motives and timing of retirement, ability to pay maintenance after retirement, and the former spouse's ability to provide for herself." *In re Marriage of Waller*, 253 Ill. App. 3d 360, 365 (1993).

¶ 39        Luis contends that his reduction in income resulting from his retirement rendered him unable to pay and thereby constituted a substantial change in circumstances. While the trial court did not go so far as to say Luis' retirement was in bad faith, it did find in its order that Luis' retirement was voluntary. Although Luis asserted that his early retirement was for medical reasons, he presented no medical evidence to support that assertion.

¶ 40        During the January 20, 2021 evidentiary hearing, Luis testified at length about all of the factors listed in *Waller* except Perla's ability to provide for herself. Perla testified as to that factor. The trial court found that Luis' early retirement was voluntary and that Luis had the

"capacity and ability to continue his employment with the Chicago Police Department." We do not find any of these factual findings to be against the manifest weight of the evidence. As Luis retired early, shortly after the MSA was entered, and provided no medical evidence or even testimony to any recent injury that prompted his retirement, we also cannot find that the trial court abused its discretion in holding that Luis' voluntary retirement was not a basis for the modification of maintenance.

¶ 41        We need not reach Perla's other claims of error or her argument in the alternative, as we reverse on the basis articulated in ¶ 35.

¶ 42                            III. Indirect Civil Contempt

¶ 43        Perla contends that the trial court erred when it refused to find Luis in indirect civil contempt when he ceased paying maintenance upon his retirement. We agree.

¶ 44        "Generally, civil contempt occurs when a party fails to do something ordered by the trial court, resulting in the loss of a benefit or advantage to the opposing party." *Cetera v. DiFilippo*, 404 Ill. App. 3d 20, 41 (2010). "Contempt that occurs outside the presence of the trial court is classified as indirect contempt." *Id*. "The power to enforce an order to pay money through contempt is limited to cases of willful refusal to obey the court's order." *In re Marriage of Logston*, 103 Ill. 2d 266, 285 (1984). "The noncompliance with an order to pay maintenance constitutes *prima facie* evidence of contempt." *Id*. "Therefore, once the *prima facie* showing is made, the burden shifts to the defendant, who may then defend by showing that he is unable to pay." *Id*. "To prove this defense, a defendant must show that he neither has money now with which he can pay, nor has disposed wrongfully of money or assets with which he might have paid." *Id*. "He who seeks to establish the fact that his failure to pay is the result of lack of funds must show with reasonable certainty the amount of money he has received." *Id*. at 286. "He

19

must then show that that money has been disbursed in paying obligations and expenses which, under the law, he should pay before he makes any payment on the decree for alimony." *Id*. "It is proper that he first pay his bare living expenses, but whenever he has any money in his possession that belongs to him and which is not absolutely needed by him for the purpose of obtaining the mere necessaries of life, it is his duty to make a payment on this decree." *Id*.

¶ 45        Whether a party is guilty of contempt is a question of fact for the trial court and is not to be overturned "unless it is against the manifest weight of the evidence or the record reflects an abuse of discretion." *Id*. at 286-87; *In re Marriage of Knoll and Coyne*, 2016 IL App (1st) 152494, ¶ 50. "The burden initially falls on the petitioner to establish, by a preponderance of evidence, that the alleged contemnor has violated a court order." *Id*.  "Once that burden is satisfied, the burden shifts to the contemnor, who has the burden of showing that the violation was not willful and contumacious and that he or she had a valid excuse for failing to follow the order." *Id*. "Contumacious conduct consists of conduct calculated to embarrass, hinder, or obstruct a court in its administration of justice or lessening the authority and dignity of the court." *Id*.

¶ 46        "The question whether failure to comply with a judgment was willful is one of fact, and the trial court's finding thereon will not be disturbed unless it is contrary to the manifest weight of the evidence." (internal citations omitted) *In re Marriage of Ramos*, 126 Ill. App. 3d 391, 398 (1984). "A decision is against the manifest weight of the evidence where the opposite conclusion is clearly evident or where the court's findings are unreasonable, arbitrary, and not based on any of the evidence." *In re Marriage of Knoll and Coyne*, 2016 IL App (1st) 152494, ¶50.

¶ 47      It is undisputed that there was a court order in place obligating Luis to pay maintenance and that he stopped paying. As such, the burden was on Luis to show that the violation was not willful and contumacious. Luis' first argument in his response to Perla's petition for indirect civil contempt was that had his motion to modify maintenance been heard in a timely fashion, no maintenance would have accrued and his only obligation to Perla would have been half of his pension benefit, which was being distributed to her. This argument was presented without citation to legal authority and is unsupported by the law. Luis made the conscious and measured decision to stop payment, so the behavior was willful. His alleged reason was that the court would agree that he could cease doing so. Choosing to engage in unilateral self-help and cease payment on a court-ordered maintenance obligation because you are confident that the court will find in your favor is both willful and contumacious. *In re Marriage of Michaelson*, 359 Ill. App. 3d 706 (affirming a finding of contempt where contemnor ceased payment of maintenance before and during pendency of a petition to terminate or modify his maintenance obligation).

¶ 48      Luis' second argument in his response was that he could not continue to pay his maintenance obligation and still cover his own expenses. This argument is not borne out by the evidence. Even if the court credited all of Luis' claims regarding his finances, that testimony did not paint a picture of someone lacking the resources to pay a $1,598 per month maintenance obligation. Luis claimed that paying his own expenses left him $300 to $400 per month but never presented any financial obligation that prevented use of the approximately $108,141 in stocks in his Compushare trust account to pay his maintenance obligation. The question before the court with regard to the question of indirect civil contempt was not whether paying his maintenance would leave Luis with a negative monthly balance, it was whether Luis

possessed the necessary resources to pay and was nonetheless refusing to do so. *Logston*, 103 Ill. 2d at 285 (defendant must show he lacks money with which he can pay). Since Luis made no assertion that he could not use these funds to pay, his failure to do so was willful and contumacious. Accordingly, the trial court's refusal to find Luis in indirect civil contempt was against the manifest weight of the evidence. We reverse that portion of the order and remand for a finding of indirect civil contempt and to set a purge amount.

¶ 49                                    IV. Attorney Fees

¶ 50                                    A. 508(b) Fees

¶ 51        Perla argues that the trial court erred in denying Perla's petition for fees under 750 ILCS 5/508(b) (West 2020) in connection with Luis' violation of his obligation to pay maintenance following his retirement. Under Section 5/508:

> "In every proceeding for the enforcement of an order or judgment when the court finds that the failure to comply with the order or judgment was without compelling cause or justification, the court shall order the party against whom the proceeding is brought to pay promptly the costs and reasonable attorney's fees of the prevailing party." *Id.*

¶ 52        "Under section 508(b), a court has no discretion as to whether to award attorneys' fees, only whether the failure to pay was without cause or justification." *In re Marriage of Michaelson*, 359 Ill. App. 3d 706, 715 (2005). "A court may deny attorneys' fees and costs where the failure to pay was justified, or the failure was not willful and wanton." *Id.* "An award of attorneys' fees will not be overturned in the absence of a clear abuse of discretion by the trial court." *Id.*

¶ 53        Perla asserts that "[b]ecause the trial court found that Luis voluntarily resigned and unilaterally stopped paying maintenance in May 2020," his refusal to pay "was necessarily

without cause or justification." Our analysis on this point goes hand in hand with our contempt analysis above. The attorney fee standard uses the less well defined language of "compelling cause or justification." 750 ILCS 5/508(b) (West 2020). The only justifications Luis offered were based in unilateral self-help and a baseless claim of inability to pay. No reasonable person would call those justifications compelling. Accordingly, the trial court abused its discretion by refusing to award Perla attorney fees under section 508(b), and we reverse and remand to the circuit court to determine the amount of fees to be awarded under section 508(b).

¶ 54                                      B. 508(a)(3.1) Fees

¶ 55        Perla asserts that if she prevails on a material or central issue in this appeal, which she has, she should be awarded fees for those fees and costs associated with the instant appeal under 750 ILCS 508(a)(3.1) (West 2020). While it could be possible to infer what argument Perla might make in favor of awarding fees based on the content of the rest of the brief, no argument is made beyond the bald statement that fees should be awarded. Even if we were to accept the simple request for fees, our supreme court has established that "a party seeking contribution must establish that he or she is unable to pay his or her attorney fees and that the other party is able to do so." *In re Marriage of Heroy*, 2017 IL 120205, ¶ 30. Perla makes no such assertion of inability to pay, so we cannot say she has established as much. Accordingly, we decline to award Perla fees or costs associated with this appeal.

¶ 56                                      V. Sanctions

¶ 57        In his response brief, Luis argues that sanctions should be imposed against Perla under Illinois Supreme Court Rule 137 (eff. Jan. 1, 2018) and Illinois Supreme Court Rule 375 (eff. Feb. 1, 1994). In her reply brief, Perla requests permission to file a petition for sanctions under Rule 375.

¶ 58    Luis' proposed Rule 137 sanctions are improper at this stage, as "Rule 137 * * * governs the proceedings in the trial court." *Sacramento Crushing Corp. v. Correct/All Sewer, Inc.*, 318 Ill. App. 3d 571, 580 (2000). However, "[a] motion for sanctions that is improperly brought in the appellate court pursuant to Rule 137 may be treated as properly brought under Rule 375 and considered on its merits." *Id.*

¶ 59    Luis argues that sanctions are merited because Perla's appeal is vexatious, harassing, and frivolous because it was filed despite allegedly being untimely under Ill. S. Ct. R. 303. Luis does not assert that the appeal is frivolous beyond the fact that it was allegedly filed late, which it was not. Luis makes the additional assertion that Perla has failed to comply with some of the provisions of the MSA, notably failing to provide a quitclaim deed, failing to provide QILDROs regarding her own pension benefits, and "otherwise ignore [sic] those portions of the Judgment that would benefit Luis." Luis argues that these failures represent a "continual pattern and practice of harassment." As all of the matters cited as indicative of this pattern are still before the trial court and are not the subject of this appeal, we decline to impose Rule 375 sanctions against Perla.

¶ 60    Perla argues, in favor of granting her leave to file a petition for Rule 375 sanctions, that Luis' attorney may have violated his ethical obligation to cite controlling authority, even when it is harmful to the party's position, because Luis' response brief did not cite to *Bostrom*. Perla further argues that Luis' argument that the underlying judgment is not final because of pending QDROs is meritless and a waste of valuable judicial resources. We deny Perla's request for leave to file a petition for sanctions as the petition is unnecessary, since Perla has presented her argument for sanctions in the reply brief itself, and we find it unavailing.

¶ 61    The sanctions that Perla argues for would be under Rule 375(b), which concerns appeals that are frivolous or not taken in good faith. Ill. S. Ct. R. 375(b). "Imposition of sanctions under Rule 375(b) is left strictly to our discretion." *Gakuba v. Kurtz*, 2015 IL App (2d) 140252, ¶ 26. Luis' counsel's failure to cite to *Bostrom* was certainly an oversight, as that case was instructive and meaningfully informed our analysis. That said, this very order is the first order to cite to *Bostrom* in any way, so we do not find that it was a sanctionable offense to overlook it. With regard to Luis' argument regarding the finality of the underlying order, we find that an arguable legal basis did exist, as is demonstrated in our above analysis of that issue. Accordingly, we decline to impose sanctions.

¶ 62                                  CONCLUSION

¶ 63    For the foregoing reasons, we reverse the trial court's order and remand to the trial court to reevaluate Luis' motion to modify maintenance with pension income treated as a marital asset rather than income, to determine the amount of past due maintenance, for a finding of contempt with a purge amount, and to determine the amount of section 508(b) attorney fees to be paid to Perla.

¶ 64    Reversed and remanded with directions.